UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CORVETTE ROBINSON,                    )   Civil No. 12-1848-MMA(WVG)
                                      )
                    Petitioner,       )   REPORT AND RECOMMENDATION
                                      )   DENYING PETITION FOR WRIT
v.                                    )   OF HABEAS CORPUS
                                      )
DANIEL PARAMO, Warden                 )
                                      )
                    Respondent.       )
                                      )
_____       )

        Corvette Robinson ("Petitioner"), a state prisoner proceeding
*pro se*, has filed a Petition for a Writ of Habeas Corpus ("Peti-
tion") pursuant to 28 U.S.C. § 2254.  Respondent Daniel Paramo
("Respondent") has filed an Answer to the Petition.  Petitioner has
filed a Reply to Respondent's Answer.  The Court, having reviewed
Petitioner's Petition, Respondent's Answer, Petitioner's Traverse,
and all documents lodged therewith and attached thereto, finds that
Petitioner is not entitled to the relief requested.  Therefore, the
Court RECOMMENDS that the Petition for Writ of Habeas Corpus be
DENIED.

12cv1848

# I

## BACKGROUND

On September 1, 2010, Petitioner was incarcerated at Richard J. Donovan Correctional Facility.  On that date, at approximately 5:30 p.m., R. Bedolla ("Bedolla"), a housing floor unit officer at the correctional facility, conducted a random cell search of cell number 117, where Petitioner was housed.[1]  [Respondent's Answer to the Petition for Writ of Habeas Corpus ("Answer") at 2; see also Rules Violation Report ("RVR") at 2.][2]  During the search, Bedolla found numerous medications in Petitioner's cell. (Answer at 2; see also RVR at 2.)  Bedolla notified Sergeant R. Flores ("Flores") who instructed Bedolla to have the medications inspected by Licensed Vocational Nurse Sinclair ("Sinclair").[3]  Sinclair confirmed that some of the medications found in Petitioner's cell were controlled substances and nurse-administered medications.  (Answer at 2; see also RVR at 2.)  Pharmacist T. Nguyen ("Nguyen") identified fourteen of the pills as Lyrica, which is a controlled substance included in Schedule V of California Health & Safety Code § 11058.[4]  (Answer at

---

[1] Since the Petition does not give a detailed account of the relevant facts of the case, the Court will provide most of the background using documents filed by Respondent.

[2] All page references to documents contained in the Court's docket are to the Court Clerk's renumbered pages, not the document's native, pre-filing, pagination.

[3] Neither the documents filed by Petitioner nor Respondent list Sinclair's first initial.

[4] California Code of Regulations, Title 15, § 3290(h) states:

The identification of unauthorized medication, to include any medication considered to be a controlled substance as described in section 3000, must be confirmed by a licensed pharmacist and that confirmation may be used as evidence in a disciplinary proceeding.  There shall be no requirement for laboratory testing of intact medications when identification of the controlled medication has been confirmed by a pharmacist.  The pharmacist will indicate whether the medication contains any of the substances listed (continued)

12cv1848

1  2; see also RVR at 2.)  Flores photographed the medications at 7:40

2  p.m., and secured them in central control evidence locker number

3  seven.[5/]  (RVR at 2.)

4       The California Department of Corrections and Rehabilitation

5  ("CDCR") issued Petitioner a disciplinary RVR report for possession

6  of a controlled substance (medications) for the purpose of

7  distribution, in violation of California Code of Regulations, Title

8  15, § 3016(c) ("Section 3016").[6/] [Answer at 2; see also RVR at 2

9  ("[Inmate] ROBINSON is aware of this report.")]. Petitioner "pled

10 guilty to unauthorized meds.  Not distribution." (Answer at 2; see

11 also RVR at 3.)  Petitioner also said, "I take my pills but

12 sometime[s] [the nurse] does not check [whether or not I take the

13 pills at the window] so I take them back to my cell so I can take

14 them when I want to." (Answer at 2; see also RVR at 3.)

15      On September 5, 2010, Correctional Officer C. Wright

16 ("Wright"), informed Petitioner that he was assigned to assist him

17 ─────────────────────

18        (continued)
            in Health and Safety Code (H&SC) section 11007 to
19          enable the determination of the appropriate
            classification level pursuant to section 3323
            relative to a disciplinary violation for
20          unauthorized possession or distribution of the
            medication.

21        California Code of Regulations, Title 15, § 11007 states that a
22  "'controlled substance,' unless otherwise specified, means a drug,
     substance or immediate precursor which is listed in any schedule in
     Section... 11058."  Pregablin is a Schedule V non-narcotic controlled
23  substance pursuant to section 11058.

24        [5/] Petitioner asserts that Flores did not take a picture of the medication.
     [See Petition at 17 ("The Officer didn't even take pictures of the medication.")].

25
          [6/] Section 3016 states, "Inmates shall not distribute, as defined in section
26  3000, any controlled substance or controlled medication."  Although Respondent
     does not cite to California Code of Regulations, Title 15, § 3016(a), the Court
27  finds this to be the section Petitioner was found guilty of violating.  See Cal.
     Code Regs., title 15, § 3016(a) ("Inmates shall not inhale, ingest, inject, or
     otherwise introduce into their body; use possess manufacture, or have under their
28  control any controlled substance, medication or alcohol, except as specifically
     authorized by the institution's/facility's health care staff.").

in the case. [RVR at 5 ("I explained to... ROBINSON my function was to gather information, question staff and inmates; screen witness(es), and complete a written report for the Senior Hearing Officer (SHO)... ROBINSON stated he understood my position and made no objections to my assignment as the Investigative Employee..."). Petitioner told Wright, "This is all my medication prescribed to me, my name is on it all, the Lyrica is given to me at the window and the nurse watch[es] me take it with me.  It's all my prescribed medication..."  (RVR at 5.)

On September 30, 2010, at approximately 9:30 a.m., Petitioner appeared before Senior Hearing Officer ("SHO") M. F. Steele for adjudication of the charge (possession of a controlled substance (medication) for purposes of distribution) against him.  (Answer at 2.)  The SHO found Robinson guilty of unauthorized possession of controlled substance (a lesser included offense) and assessed 130 days of lost behavioral credit as Petitioner's penalty pursuant to a Division B offense.  (Id.)  In the RVR, the SHO listed the evidence indicating Petitioner's guilt: (1) Petitioner's plea statement; (2) witness statement expressing that the medication belonged to Petitioner; (3) Bedolla's written report; and (4) Nguyen's assertion that Lyrica is a controlled substance.  (RVR at 3.)

Petitioner appealed the SHO's decision to the Second Level of Review at the Department of Corrections and Rehabilitation in hopes of having his good time credit restored.  (See generally Petition at 17.)  Chief Deputy Warden, W. Suglich ("Suglich") denied Petitioner's appeal because Petitioner's due process rights were not

1  violated and because Lyrica is a controlled substance. (Petition at

2  18.)

3       Petitioner filed a Petition for Writ of Habeas Corpus in the

4  California Court of Appeal (See Petition at 20.)  On March 21, 2012,

5  the Court of Appeal concluded that there was enough evidence in the

6  record to deny the Petition.  (Id. at 20-21.)

7       Petitioner filed a Petition for a Writ of Habeas Corpus in

8  the California Supreme Court. On June 20, 2012, the Petition was

9  denied.  (Petition at 23, Respondent's Lodgment No. 6).

10      On July 26, 2012, Petitioner filed the Petition for Writ of

11 Habeas Corpus that is now before the Court. On November 20, 2012,

12 Respondent filed an Answer to the Petition. On January 29, 2013,

13 Petitioner filed a Reply to Respondent's Opposition.

14                                **II**

15                         **SCOPE OF REVIEW**

16      This Petition is governed by Title 28, United States Code,

17 § 2254, as amended by the 1996 Antiterrorism and Effective Death

18 Penalty Act ("AEDPA").  Section 2254(a) sets forth the following

19 scope of review for federal habeas corpus claims:

20           The Supreme Court, a Justice thereof, a circuit
             judge, or a district court shall entertain an
21           application for a writ of habeas corpus in
             behalf of a person in custody pursuant to the
22           judgment of a State court only on the ground
             that he is in custody in violation of the Con-
23           stitution or laws or treatises of the United
             States.  28 U.S.C. § 2254(a).

24      As amended, 28 U.S.C. § 2254(d) reads:

25           (d) An application for a writ of habeas corpus
26           on behalf of a person in custody pursuant to the
             judgment of a State court shall not be granted
27           with respect to any claim that was adjudicated
             on the merits in State court proceedings unless
28           the adjudication of the claim-

12cv1848

(1) resulted in a decision that was *contrary to*, or involved and unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an *unreasonable determination* of facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2245(d)(1)(2) (emphasis added).

"AEDPA establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Womack v. Del Papa, 497 F.3d 998, 1001 (9th Cir. 2007) [quoting Woodford v. Viscotti, 537 U.S. 19, 24 (2002)].  To obtain federal habeas relief, Petitioner must satisfy either section 2254(d)(1) or section 2254(d)(2). See Williams v. Taylor, 529 U.S. 362, 403 (2000). The Supreme Court has ruled that the "contrary to" clause of § 2254(d)(1) permits a grant of habeas relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Id. at 412-13.  The Supreme Court has also interpreted the "unreasonable application" clause of § 2254(d)(1) to allow a grant of "the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  The Supreme Court has clarified that under § 2254(d)(2), even an erroneous or incorrect application of clearly established federal law does not support a habeas grant, unless the state court's application was "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

12cv1848

1    When there is no reasoned decision from the state's highest
2    court, the Court "looks through" to the underlying appellate court
3    decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991). If
4    the dispositive state court order does not "furnish a basis for its
5    reasoning," federal habeas courts must conduct an independent review
6    of the record to determine whether the state court's decision is
7    contrary to, or an unreasonable application of, clearly established
8    Supreme Court law.  See Delgado v. Lewis, 223 F.3d 976, 981-82 (9th
9    Cir. 2000) (overruled on other grounds by Lockyer, 538 U.S. at 75-
10   76.)   A state court need not cite Supreme Court precedent when
11   resolving a habeas corpus claim.  Early v. Packer, 537 U.S. 3, 8
12   (2002).  Absent citations to Supreme Court precedent, habeas relief
13   is not merited if the state court decision neither contradicts the
14   reasoning nor the result of Supreme Court rulings.  Id.

15   When a state court reaches the merits of a claim, but does
16   not articulate the rationale for its determination, such as by
17   issuing a silent denial, the court must conduct an independent
18   review of the record to determine whether the state court clearly
19   erred in its application of controlling federal law.[1/]  Pirtle v.
20   Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that when the state
21   court reaches the merits of a claim, but provides no reasoning to
22   support its conclusion, "we independently review the record, [but]
23   we still defer to the state court's ultimate decision"); see also
24   Green v. Lambert, 288 F. 3d 1088, 1089 (9th Cir. 2002) ("While we
25   are not required to defer to a state court's decision when that

26
27   [1/] The Court of Appeal only addressed Petitioner's claim that there was not
     enough evidence in the record to support his guilt.  The California Supreme Court
     issued a silent denial.  Since Petitioner also contends his due process rights
28   were violated and the penalty imposed on him was too severe, this Court will
     examine these contentions, as well.  However, ultimately, the Court defers to the
     state courts' decisions.

court gives us nothing to defer to, we must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law.") (quoting <u>Fisher v. Roe</u>, 263 F.3d 906 914 (9th Cir. 2001). The silent denials of the state appellate and supreme courts are considered to be decisions "on the merits of the claims." <u>Hunter v. Aispuro</u>, 982 F.2d 344, 347-48 (9th Cir. 1992); <u>see also</u> <u>Lambert v. Blodgett</u>, 393 F.3d 943, 965-67 (9th Cir. 2004) (discussing the meaning of "adjudicating on the merits"); <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011) (holding that an unexplained denial of a claim by the California Supreme Court is an adjudication on the merits of the claim entitled to AEDPA deference unless "there is a reason to think some other explanation for the state court's decision is likely"). <u>But see</u> <u>Evans v. Chavis</u>, 126 S. Ct. 846, 852 (2006) (holding that <u>Aispuro</u> presumption that silent denial was "on the merits" does not excuse district court from determining whether state habeas petition was also untimely for statute of limitations purposes).

It is only when a state court *could not* reach the merits of a claim (i.e., because a procedural bar prevented it) that "AEDPA's standard of review does not apply." <u>Killian v. Poole</u>, 282 F.3d 1204, 1208 (9th Cir. 2002). In such a case, the federal court reviews de novo. <u>Pirtle</u>, 313 F.3d at 1167; <u>see also</u> <u>Hayes v. Brown</u>, 399 F.3d 972, 978 (9th Cir. 2005) (en banc) (noting that pre-AEDPA habeas review provides that "state court judgments of conviction and sentence carry a presumption of finality and legality and may be set aside only when a state prisoner carries his burden of proving that

12cv1848

1   [his] detention violates the fundamental liberties of the person

2   safeguarded against state action by the Federal Constitution.").

3        In addition, once a petitioner has satisfied the provisions

4   of AEDPA, the court must determine, applying a *de novo* standard,

5   whether there has been a constitutional violation. <u>Frantz v. Hazey</u>,

6   533 F.3d 724 (9th Cir. 2008) (en banc); <u>see also</u> <u>Fry v. Pliler</u>, 551

7   U.S. 112, 120 (2007) (holding that harmless error analysis is still

8   required after a showing that the state court opinion was contrary

9   to or involved an unreasonable application of clearly established

10  federal law, because 28 U.S.C § 2254(d) "sets forth a precondition

11  to the grant of habeas relief... not an entitlement to it.").

### III

### DISCUSSION

14       Petitioner claims that habeas relief is proper based on the

15  following grounds: (1) he was deprived of his Fourteenth Amendment

16  due process rights; (2) there was insufficient evidence to find him

17  guilty of unauthorized possession of a controlled substance; and (3)

18  his punishment was too severe.

19       **A.   PETITIONER WAS NOT DEPRIVED OF HIS FOURTEENTH AMENDMENT**

20            **DUE PROCESS RIGHTS**

21       "A due process claim is cognizable only if there is a

22  recognized liberty or property interest at stake." <u>Schroeder v.</u>

23  <u>McDonald</u>, 55 F.3d 454, 462 (9th Cir. 1995) [citing <u>Board of Regents</u>

24  <u>v. Roth</u>, 408 U.S. 564, 569 (1972)]. "[T]he Due Process Clause

25  itself does not create a liberty interest in credit for good

26  behavior." <u>Sandin v. Connor</u>, 515 U.S. 472, 477 (1995). However, a

27  state statute that rewards prisoners for good behavior, by reducing

28  the length of their prison term, does create a liberty interest.

1   <u>Id.</u> at 447-78.  California has such a statute.  California Penal

2   Code § 4019(b) states:

> Subject to the provisions of subdivision (d), for each
> four-day period in which a prisoner is confined in or
> committed to a facility as specified in this section, one
> day shall be deducted from his or her period of confine-
> ment unless it appears by the record that the prisoner
> has refused to satisfactorily perform labor...

7        Prisoners are afforded due process safeguards in prison

8   disciplinary proceedings, but not necessarily the same safeguards

9   that apply to "free citizens in an open society."  <u>Wolff v.</u>

10  <u>McDonnell</u>, 418 U.S. 539, 556, 560 (1974) ("Prison disciplinary

11  proceedings are not part of a criminal prosecution, and the full

12  panoply of rights [to] a defendant in such proceedings does not

13  apply.").  Procedural due process safeguards in disciplinary

14  proceedings require that: (1) "written notice of the charges... be

15  given to the disciplinary-action defendant in order to inform him of

16  the charges and to enable him to marshal the facts and prepare a

17  defense"; (2) "a written statement by the factfinders as to the

18  evidence relied on and reasons for the disciplinary action [is

19  provided]"; and (3) a defendant has the right "to call witnesses and

20  present documentary evidence in his defense when permitting him to

21  do so will not be unduly hazardous to institutional safety or

22  correctional goals."  <u>Id.</u> at 565-566 (citations omitted) (internal

23  quotations omitted).

24       Here, Petitioner does not explain how his due process rights

25  were violated.  Rather, he simply states that they were.  The Court

26  disagrees.

27       The first prong of procedural due process in a disciplinary

28  proceeding was met because Petitioner received written notice of the

10

charges being brought against him. [RVR at 2 ("Subject acknowledges he received a copy of the [California Department of Corrections] 115/115A on 9/5/10.")]. Additionally, the Court agrees with Respondent that although Petitioner was eventually found guilty of a lesser included serious rules violation, he was still given written notice of the more serious charge that was brought against him. [Answer at 3; see also Cal. Code Regs., tit. 15, § 3315(f)(3) ("Upon completion of the fact-finding portion of the disciplinary hearing, the inmate may be found: Guilty as charged or guilty of an included serious rule violation and assessed a credit forfeiture pursuant to section 3323."). Here, unauthorized possession of a controlled substance is the lesser included serious rules violation, and Petitioner was notified of the charge for the more serious offense (intent to distribute). See Cal. Code Regs., tit. 15, § 3315(a)(2)(D) (indicating that unauthorized possession of a controlled substance is classified as a serious offense).

The second prong of procedural due process was met because the SHO provided a statement of the evidence that he relied upon. The statement of evidence was provided to Petitioner in writing. The evidence consisted of: (1) *Petitioner's guilty plea*;[8] (2) inmate Boone's[9] ("Boone") witness statements; (3) Bedolla's written report;

---

[8] Of course, the Court considers Petitioner's guilty plea as strong evidence to deny his Petition. Petitioner pled guilty with an explanation. [RVR at 3 ("I pled guilty to unauthorized [m]eds. Not distribution.")]. Petitioner made his admission during his disciplinary hearing for possession of controlled substances for purposes of distribution. See RVR at 2-3. Petitioner does not dispute making a guilty plea in any of the documents that he filed with the Court. The Court sees no reason not to take his admission, which is highly probative of his guilt, at face value.

[9] Neither party filed any documents indicating Boone's first name or initial. Petitioner requested Boone be a witness at the disciplinary hearing, but that request was denied because Boone had already given statements and answered Petitioner's questions. Boone's statements confirmed that the Lyrica was Petitioner's medication, that the medication was issued by a nurse, and that Petitioner takes his medication. (RVR at 6.)

1 and (4) Nguyen's determination that Lyrica contained Pregablin,

2 which is a Schedule V controlled substance. Petitioner was disci-

3 plined for unauthorized possession of a controlled substance. (RVR

4 at 4.)

5     The third prong of procedural due process was met because

6 Petitioner was permitted to obtain and present the witness statement

7 of Boone, even though Boone was not allowed to testify at the

8 hearing. (RVR at 3, 6.) Prison officials have discretion to

9 restrict witness testimony in order keep disciplinary hearings

10 within a reasonable time limit, if the witness's statement would be

11 repetitive or superfluous. Ponte v. Real, 471 U.S. 491, 499 (1985)

12 ("[P]rison officials must have the necessary discretion to keep the

13 hearing within reasonable limits and refuse to call a witness that

14 may create a risk of reprisal or undermine authority, as well as to

15 limit access to other inmates to collect statements or compile other

16 documentary evidence." (citation omitted) (internal quotations

17 omitted); Bostic v. Carlson, 884 F.2d 1267, 1273 (9th Cir. 1989)

18 ("[P]rison disciplinary committees may sometimes deny a defendant

19 the right to call redundant and unnecessary witnesses.") (citation

20 omitted). But an automatic denial of a prisoner's right to call

21 particular types of witnesses is not permitted. Bartholomew v.

22 Watson, 665 F.2d 915, 918 (9th Cir. 1982) ("A blanket proscription

23 against the calling of certain types of witnesses in all cases

24 involving institutional security is an overreaction which violates

25 minimal due process.") Lastly, prison officials must justify a

26 decision that disallows a witness to testify. Ponte, 471 U.S. at

27 499.

28

1    Here, Boone simply confirmed that the Lyrica found in
2    Petitioner's cell was Petitioner's medication, that the medication
3    was issued by a nurse, and that Petitioner takes his medication.
4    (RVR at 6.)  Moreover, Petitioner fails to indicate how Boone would
5    have made substantiated or helpful statements in Petitioner's favor
6    at Petitioner's hearing, or why Boone was a necessary witness.
7    Boone's statements did not help Petitioner's case; they simply
8    reiterated Petitioner's unsuccessful arguments.  Therefore, the SHO
9    was within his discretion to deny Petitioner's request to have Boone
10   as a witness at the disciplinary hearing because Boone's testimony
11   simply would have been redundant. [See RVR at 3 ("Statement of
12   witness, stipulation or reason for denial: Boone gave statements and
13   answered ROBINSON's in the [internal investigation] report.")].  As
14   a result, the Court RECOMMENDS that Petitioner's claim in this
15   regard be DENIED.

16   **B.   THERE WAS "SOME EVIDENCE" OF PETITIONER'S GUILT**

17        In Superintendent v. Hill, the Supreme Court held that "the
18   requirements of due process are satisfied if some evidence supports
19   the decision by the prison disciplinary board to revoke good time
20   credits." 472 U.S. 445, 455 (1985). "This standard is met if 'there
21   was some evidence from which the conclusion of the administrative
22   tribunal could be deduced...'"  Id. [quoting United States ex rel
23   Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927)].
24   To determine whether the "some evidence standard" was met in the
25   administrative proceeding, a reviewing court just looks at whether
26   there is some evidence in the record to support the disciplinary
27   board's findings.  Hill, *supra* at 455-56 ("Ascertaining whether this
28   standard is satisfied does not require examination of the entire

12cv1848

1   record, independent assessment of the credibility of witnesses, or

2   weighing of the evidence."). The Supreme Court expressly declined

3   to adopt a more rigid standard because "[p]rison disciplinary

4   proceedings take place in a highly charged atmosphere." <u>Id.</u> at 456.

5        Here, Petitioner claims that there was not enough evidence to

6   find him guilty of unauthorized possession of a controlled sub-

7   stance. The Court of Appeal found that there was "some evidence to

8   support the disciplinary finding." (Respondent's Lodgment 4 at 3.)

9   This Court agrees with the Court of Appeal.

10       The SHO concluded that there was not enough evidence to find

11  Petitioner guilty of possession of a controlled substance with

12  intent to distribute. (RVR at 4.) But, the SHO found that there

13  was enough evidence to find Petitioner guilty of unauthorized

14  possession of a controlled substance based on the following

15  evidence: Petitioner pled guilty to possession of unauthorized

16  medication, Bedolla found the medication in Petitioner's cell, and

17  Nguyen confirmed that the Lyrica found in Petitioner's cell

18  contained Pregablin, which is a controlled substance. Taken

19  together, this is "some evidence" of Petitioner's guilt. <u>See</u> Hill,

20  472 U.S. at 457; <u>Sass v. California Board of Prison Terms</u>, 461 F.3d

21  1123, 1129 (9th Cir. 2006) [overruled on other grounds by <u>Hayward v.</u>

22  <u>Marshall</u>, 603 F.3d 1123 (9th Cir. 2006)]. The Court of Appeal's

23  denial of Petitioner's claim was neither contrary to, nor an

24  unreasonable application of, clearly established federal law. As a

25  result, the Court RECOMMENDS that Petitioner's claim in this regard

26  be DENIED.

27

28

12cv1848

1        **C.**   **DEPRIVING PETITIONER OF 130 DAYS OF GOOD TIME CREDIT WAS**

2            **NOT EXCESSIVE**

3        Petitioner asserts that his penalty of 130 days forfeiture of

4    good time credits was excessive. [Petition at 6 ("Petitioner's

5    lesser charge [possession of a controlled substance] is a Div. F

6    offense which [sic] only 30 days credit loss [sic].")].[10]   In

7    essence, Petitioner argues that the 130-day penalty assessed to him

8    was 100 days too many.  The Court disagrees.

9        California Code of Regulations, Title 15, § 3323(d)(6)(A)

10   states that first time offenders found guilty of unauthorized

11   possession of a controlled substance are penalized with a credit

12   forfeiture of 121 to 130 days. Petitioner was deprived of 130 days

13   of good time credit, which is at the high end, but still within this

14   range. The deprivation of good time credits was not excessive. As a

15   result, the Court RECOMMENDS that Petitioner's claim in this regard

16   be DENIED.

17                               IV

18                    **CONCLUSION AND RECOMMENDATION**

19       The Court, having reviewed Petitioner's Petition for a Writ

20   of Habeas Corpus, Respondent's Answer, Petitioner's Reply, and all

21   documents lodged therewith and attached thereto, finds that

22   Petitioner's due process rights were not violated. Further, the

23   Court finds there was some evidence in the record to support a

24   finding that Petitioner possessed a controlled substance without

25   authorization, and his punishment was not excessive.  Therefore, the

26

27

---

28       [10] Unauthorized possession of a controlled substance is a Division B offense.  Cal. Code Regs., tit. 15, § 3323(d)(6).

1   court RECOMMENDS that Petitioner's Petition for a Writ of Habeas

2   Corpus be DENIED.

3        This Report and Recommendation of the undersigned Magistrate

4   Judge is submitted to the United States District Judge assigned to

5   this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

6        **IT IS ORDERED** that no later than <u>March 10, 2013</u>, any party to

7   this action may file written objections with the Court and serve a

8   copy on all parties.  The document should be captioned "Objections

9   to Report and Recommendation."

10       **IT IS FURTHER ORDERED** that any reply to the objections shall

11  be filed with the Court and served on all parties no later than

12  <u>March 24, 2013</u>.  The parties are advised that failure to file

13  objections within the specified time may waive the right to raise

14  those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>,

15  951 F.2d 1153 (9th Cir. 1991).

16

17  DATED:  February 7, 2013

18

19  _____

20                              Hon. William V. Gallo
                                U.S. Magistrate Judge

21

22

23

24

25

26

27

28

16

12cv1848